May it please the Court, my name is Dorothy Yamamoto, and I, along with fellow student counsel Gregory Michael, represent the petitioner Mr. Medina-Nunez. Joining us today are supervising attorneys Gary Watt and Stephen Tullefield. I plan to reserve two minutes of my time for rebuttal. Good luck. Thank you, Your Honor. The first step in the categorical approach is to California Vehicle Code, Section 2800.2, is not categorically a crime involving moral turpitude because the California statute has subsection B, which redefines the willful or wanton element of the statute to include three minor traffic violations. Counsel, this argument was not made to the BIA. In fact, in the BIA's decision, it really specifically said that your client advanced no argument to try to distinguish the California crime from those examined by the Board in previous cases. In view of that, what should we do? Should we deem the argument not exhausted? Should we remand it to the Board to consider your arguments in the first instance? What's the right outcome when a brand-new argument is raised here? Because the BIA still examined the IJ's determination regarding the crime involving moral turpitude issue, this Court has stated in Cervantes v. Holder that that is sufficient to consider the issues fully exhausted, the remedies fully exhausted. Well, that gives us jurisdiction, but that doesn't say what we ought to do about it when it's a brand-new argument that the BIA has never had any opportunity to consider. Even so, Your Honor, given that the BIA did take the opportunity to examine the IJ's ruling and the fact that this Court can have — does have jurisdiction, it still can — this Court can still consider that issue and decide whether or not the California Vehicle Code, Section 2800.2, is a crime involving moral turpitude. And here, because Subsection B does include these three minor traffic offenses, such as failing to register a vehicle, failing to signal 100 feet before turning, and failing to come to a complete stop at a stop sign, this manner of driving that the statute criminalizes is — has been recognized by the California Court of Appeal and — But you have to do all three things while evading the police, right? Correct. And, you know, it's hard to cram three — if you're just doing normal driving, you're not trying to evade the police, and you're being a law-abiding driver, you might have one infraction. You know, you might fail to stop before a stop sign or something like that. But cramming three of them in one episode is a little difficult. And why don't we — why isn't it — I mean, when you're trying to evade the police and being reckless enough to commit three of these things in a row, even though each of them Two reasons, Your Honor. First, the California Court of Appeal, in analyzing the elements of the statute, recognized that these three one-point violations can be satisfied by negligent conduct, such that a jury — Yes, but they can. But the ultimate crime, because it requires the driving while fleeing or evading, has at least a mens rea of recklessness or greater under California law. So the fact that the underlying things might be negligent doesn't really tell us what the 2800.2 mental state is. But it does, Your Honor, because the California Court of Appeal and People v. Pinkston, People v. Williams, and People v. Avlos all examined this second element of willful or wanton and discussed how subsection B alters that element. But it doesn't alter it below reckless. It does, Your Honor. Not under — that aspect of Pennulier that we decided was not overruled, as far as I can tell, in which we held that it does require recklessness? No, Your Honor. This Court in Pennulier recognized that recklessness can be sufficient to satisfy this element. But given subsection B, this Court did not determine or analyze whether the mens rea can even go below that. However, the California Court of Appeal has analyzed this issue and recognized that a jury is not required to find that a defendant recklessly disregarded a substantial risk. Right. But isn't the issue risk of harm rather than recklessness per se? Judge Posner, in the Seventh Circuit decision, seems to focus on the issue of whether there was harm or intent to harm or recklessness that was likely to lead to harm, and that the issue was not recklessness but the potential for harm that pushes it into this kind of 19th century phrase. It sounds like something Mr. McAuburn would say, moral turpitude, that pushes it over the edge is this issue of harm. So if you lose on the recklessness, are you gone? Have you lost the case? Or is it there's another issue there having to do with intent to harm, isn't there? Yes, Your Honor. Two points. One is that when a statute does not require actual harm, which 2800.3 requires, but not 2800.2, when there's no requirement for actual harm, usually as this Court has held in Nunez, there must be an intent to harm, which the BIA in Ruiz-Lopez and in May v. Ashcroft held this intent to harm exists when a reckless disregard of a substantial risk exists as a surrogate for intent to harm. And so in order to find that this statute is categorically a crime involving moral turpitude means that in every instance a jury must be required to find that the defendant's manner of driving demonstrated a reckless disregard of a substantial risk. What effect, if any, does People v. Dewey have on our analysis in which the California Court held that under California law this is a crime involving moral turpitude? Two points, Your Honor. First, in People v. Dewey, the California Court was examining an older version of the statute than the statute that Mr. Medina Nunez was convicted under. Specifically, the statute did not have subsection B, and therefore the element of willful or wanton disregard was defined by its traditional meaning, which is usually recklessness. And furthermore, this Court in Cascio and Garcia has stated that California rules regarding evidentiary context does not necessarily provide persuasive value in the immigration context. We're looking at something different in an evidentiary context. We're looking at a tendency to mislead or evade telling the truth. Yes. We're looking at something, using the word in a slightly different sense, would you say, in the immigration context? Yes, Your Honor. And if there are no further questions, I would like to reserve the remainder of my time. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Rebecca Nahas for the United States Attorney General. The Court should affirm the Board's order, including its finding that felony evading in California is categorically a crime involving moral turpitude, because it requires both the requisite mens rea as well as irreprehensible conduct. All right. Let me just toss this out. It's 3 o'clock in the morning. There's nobody around. I'm driving down the street. A light flashes behind me. It's a police officer. I speed up. I run a stop sign. I swerve into the oncoming lane, and he stops me a quarter of a mile down the road. I've committed a crime of moral turpitude for purposes of the BIA under those circumstances? Yes, Your Honor. Despite – I believe your hypothetical goes to the fact that there is no – that the risk of harm is unlikely because there's no one around. No harm. There's no risk of harm. There's no intent of harm. Right. But in order for a conviction to happen, the jury has to decide or you have to plead guilty to having driven in a willful or wanton disregard for the safety of others. So within that, the conduct is morally turpitudinous. And I'd like to begin – No, I don't. I just look at the label. I don't look down into the substantive conduct and whether there was any harm that conceivably could have happened under the circumstances. Under the categorical approach, you look at the elements and the minimal conduct required under the elements. I'm a little surprised that you said yes. So brought in to just Ponce's hypothetical. I mean, what if when he runs at stop sign, there is a pedestrian there and he runs into a pedestrian? Or when he goes in the oncoming lane, there's a bicycle in the oncoming lane that he hits. Why aren't both of those things at least listed things that raise a risk of harm? It's at night. You've got the police behind you. Certainly. I'm a little surprised you sort of – Well, certainly, Your Honor. I guess my focus was on – Doesn't – isn't the whole premise of the statute that when you flee the police and commit infractions, a series of infractions, that you must be driving in a way that's dangerous? I mean, this is what cars do. Cars kill people. Absolutely, Your Honor. When driven in a reckless fashion, right? Absolutely, Your Honor. And I think that brings me to the point that petitioners attempt to look at the elements in isolation. And I urge the court to look at the statute in aggregation and as a whole. The first element we have is that you have to willfully flee from a police officer with the intent to evade. So we have a specific intent offense. It requires the defendant to hear and see the police sirens, know that a police officer in a uniform, in a marked car, is commanding him to stop, yet deliberately choose to ignore that police officer's command. So we have – just starting with that first element, we have intentional conduct, which is a sufficient mens rea to be a crime involving moral turpitude, and we have reprehensible conduct. Because certainly acting in that manner places other people at risk of harm and also violates the duties we owe to society in general to abide by law enforcement and respect the enforcement of law. Where does moral turpitude stop underneath it? Certainly it's a crime, and certainly he deserves to be punished for it. But if we make the definition of moral turpitude so elastic, we're encompassing within the boundaries of moral turpitude probably 90 percent of what the criminal law would penalize. It completely distends the boundary of moral turpitude, doesn't it? I would disagree. I think that this statute specifically wouldn't expand moral turpitude in a way that Your Honor was describing. I think this statute – I just described the first element. The second element is an aggravating factor. Not only do you have to willfully flee a police officer in a vehicle, which the Supreme Court in Skies – which, in a different context, described how inherently violent and dangerous vehicle flight from a police officer. So not only are you doing that, but you're also doing it in a manner that shows willful and wanton disregard for the safety of others. Well, wasn't it significant in May, the Seventh Circuit opinion, and also the unpublished Third Circuit opinion, that it was an aggravated version of evading? It was aggravated evasion in Judge Posner's case. In the Third Circuit, it was second-degree evasion. And this is the simplest of simple evasion. I was fudging my hypothetical by making it 3 o'clock in the morning and positing that no one was around. But even if there was no conceivable risk of harm, no conceivable risk of harm, this statute would still criminalize that behavior. Isn't that true? You don't need a risk of harm. I think, again, you look at the elements, and in order to have a conviction, the prosecutor must show that you intentionally fled a police officer and acted in a willful or wanton disregard for the safety of others. So I would take issue with the characterization that this statute would reach conduct that doesn't involve some risk of harm. By virtue of the fact that it's in a vehicle, you're fleeing the police while using essentially a weapon. It is inherently dangerous. The Supreme Court — Your position is that even if there's no one around to be endangered, you can still be reckless in terms of risking endangering others. Well, the police officer will certainly be present, right? In every evading case, a police officer's life may be placed in — And property is present in all of them, too. I'm sorry? Property also is present. That's right, Your Honor. But in terms of human life, we have a police officer, you know, engaging in his duties and being placed at risk of harm. And I want to address Petitioner's argument that this statute is somehow converted into a negligent statute by — But that's true whether or not you have three infractions, right? I'm sorry, what's true? That's true whenever you have somebody fleeing from the police. The three infractions become irrelevant. Right. Yeah, I mean, I think arguably we have enough — Endpoint to your argument is that all fleeing from the police statutes are CMITs, right? Well, I think that the board — I'm sorry, I should make it clear. All fleeing using a vehicle. Maybe fleeing on foot is different, but I'm saying if you're just fleeing from police in a motor vehicle, or in a car at least — I don't want to step before the board. The board in matter of Ruiz considered — But that's the logical implication of your argument. That's right. I do think that this is a morally — If there are two infractions or three, it wouldn't matter if there were zero infractions. Once the police flashes a sign, once they've got a — and you decide to take off, you put property in danger, you put life in danger, possibly the life of the police officer, your own life. I don't want to go that far because the board hasn't gone there. All I wanted to — It's interesting that you are going that far. I just wanted — You're making an argument that does go that far, right? Okay. Well, the point I was making is — Let me put it differently. If we accept your argument in this case and the next case comes along where there are no infractions, would we be able to distinguish it? I'm sorry. So the question is if it's just like a misdemeanor? We accepted your argument in this case, right? Right. And we wrote an opinion holding that. We couldn't distinguish it next time around in a case where there was no requirement of three infractions, right? Well, it was just a plane-fleeing-by-car case. I'm not suggesting that the Court should find just based on the first element that this is a crime involving moral turpitude. I just wanted to highlight the fact that there is that first element and that we should look at the statute in the aggregate. I'm not opining — I understand that. But essentially what you're saying is you've got the first element and therefore the fact that the three — at least I was implicit about it — the fact that the three infractions are themselves not reckless or not terribly serious doesn't matter. No, that's not the position. So what work, in your view, what work do those three — does the requirement of three infractions do? The three infractions provide an aggravating factor. I thought it was something different than that. And maybe you can correct me if I'm wrong. It looks to me like all the elements of the crime are found in subsection A. And subsection B really is about evidence. It says one way to prove that you were in wanton and willful disregard of the safety of persons and property is to prove that actual property damage occurred. And another way to prove that you were willful and wanton is to demonstrate that while you were fleeing, you were busy committing minor traffic infractions.  But the element remains willful and wanton disregard while fleeing. Am I missing something about the structure of the statute? Because if you look at it that way, this statute is really just like the other ones. May I respond? My time is out. I hope so. Thank you. Absolutely, you're right, Your Honor,  The element remains the same. It remains at least reckless as this Court held in Pennular. And so the fact that in isolation, taken apart from the rest of the statute, it's three negligent violations is meaningless because we look at the entire statute. And when you're engaging in three traffic violations while also fleeing from a police officer, that rises to the level of willful or wanton disregard. Unless there are any other questions? Thank you. Thank you, Your Honors. Your Honor, the California courts already examined whether flight from a police officer, which is defined by the elements of 2800.1, as not stopping when a police officer flashes his lights, sounds his siren, and is distinctively marked, and then commits three minor traffic violations. The Court of Appeal in People v. Abelos, Pinkston, Williams, Laughlin have recognized that reckless driving is not a lesser included offense of 2800.2 and that to infer in every circumstance a recklessness from the act of not stopping while committing three minor traffic violations would be akin to interpreting the statute such that an unconstitutional mandatory presumption would exist in the statute. Thus, because the statute does not in every circumstance infer this reckless disregard, the statute does include conduct that is broader than the federal generic definition of moral turpitude. And furthermore, to go back to Your Honors, Justice Graber's concern, it is not necessary for this case to decide the merits, and this court can remand to the BIA to address the first issue if it wishes. Thank you. Okay, thank you. Thank you. The case is signed and will stand submitted.
judges: Ponsor, Kozinski, Graber